ILLINOIS CENTRAL RAILROAD COMPANY v. HUGH A. McGOWAN.

[46 South., 55.]

1. RAILROADS. *Plantation roads. Crossings. Code* 1906, § 4058.

Under Code 1906, § 4058, making it the duty of every railroad company to construct and maintain convenient and suitable crossings over its track for necessary plantation roads:

(a) The company must maintain the crossing over the whole width of its right of way; but

(b) The terms "necessary plantation roads" mean roads necessary to the plantations to which they appertain, and, while an occasional use of the crossing by others does not relieve the company of liability, it is not bound to remedy defects caused by constant heavy driving done by others with the owner's consent.

2. INSTRUCTIONS. *Conflicts.*

Conflicting instructions should not be given.

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

McGowan, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Mayes & Longstreet*, for appellant.

Exactly what is the extent of the "suitable crossings" which the statute, Code, § 4058, requires a railroad company to make and maintain over its tracks for necessary plantation roads? That is to say, where does the crossing begin and where does it end? Is it such a crossing as begins with the actual railroad structure on the one side of the track and ends with the actual railroad structure on the other? Or is it such a crossing as must begin at the extreme limit of the railroad right of way although it may be one hundred feet from the center of the track on the one side, and runs to the extreme end of the

right of way, although it may be a hundred feet from the center of the railroad track, on the other side?

What is the exact meaning of the expression employed in that provision of "necessary plantation road"? In other words does the statute mean, and mean only, that the plantation road constructed shall be such a road as is necessary to the use and enjoyment of the plantation itself? Or does it mean such a road as being on a man's plantation he can throw open to the public and to all sorts of traffic, and still make the railroad company maintain it in good order as a plantation road?

The trouble of which McGowan complains was not a trouble existing upon the railway track; nor was it a trouble existing on the railroad embankment; nor was his trouble on the approach, considering the approach to be the dump or fill by which the climb was made up to the level of the railway track. His trouble and complaint is about a mud hole which is in the plantation road down at the foot of the embankment where the approach begins but still within the limits of the railroad right of way.

In other words, we have here a complaint for the application of the statutory penalty on the simple ground that in the plantation road which approaches the crossing point of the railway track, there is a mud hole, and McGowan's claim, to put it in simple form, is that the railway company must not only furnish him with a suitable crossing over its track and embankment, but also must work and keep in order his little plantation road from side to side of the entire theoretical right of way.

That is not the meaning of this statute. The statute is to be strictly construed because it is a highly penal statute. *Railroad Co.* v. *Morrell,* 78 Miss., 446, 28 South., 824; *Railroad Co.* v. *Anderson,* 76 Miss., 582, 25 South., 295.

Within the meaning of the statute, what is a necessary plantation road? We grant that it means such a road as is necessary or convenient to the owner of a plantation to the use and enjoyment of his plantation; we grant that he has a right to

such a crossing for his plantation road as would enable him to haul any of the products of his plantation backward and forth from one side to the other, or haul any supplies needed on his plantation.   But such was not the case presented here.

McGowan agreed and consented that this road and this crossing should be used by persons who were not working on his plantation and who were not handling his plantation products, and who had no connection with his plantation.   He undertook to turn it into a common neighborhood road, to all intents and purposes.   He himself undertook to haul wagons loaded with lumber and with wood to and from a saw mill in his vicinity.   He authorized outsiders to use his road commonly, and amongst other things, to haul wagons loaded with logs for saw mill supply.   He consented to this condition of things; he consented to this extraordinary use of the road which the evidence shows directly produced and brought about the condition of things of which complaint is made.

The statute does not require, we submit, that on every plantation or on every little piece of land like this which is bisected by the railroad (McGowan really only had two acres on the east side) the railroad company shall on the demand of the owner, maintain a road adapted for logging and lumber hauling and mill use, and all the variant and burdensome uses of a neighborhood.   *Johnson* v. *Railway Co.,* 96 Minn., 316.

*Robert Powell,* for appellee.

It is not denied that with the knowledge of the railroad company, the crossing for several months was practically impassable for the plantation crossing or any other purposes.

It is not denied that a trifling outlay in bridging the ditch at the foot of the embankment over the barrow pit made by the appellant would remedy the trouble, but appellant's contention is that the owner having committed the unpardonable sin of accommodating his neighbors with a passage over his crossing forfeited forever any right to ever afterwards demand of the

railroad company the performance of its statutory duty of maintaining the crossing.

To this we reply that the railroad company with full knowledge made no objection. That the hauling was of lumber to be shipped at a station on defendant's line, to-wit Segars and was for the railroad company's direct benefit; that the crossing could have been repaired by the railroad company at a trifling expense and that by such repairs it would have only done that which it should have done in the first instance; provided a covered passage for the flow of water along the side of this embankment on the east side as they did on the west side.

If the theory of the appellant, that because appellee permitted others to pass over the crossing bars him from recovering, is true, then how much crossing will do so and for how long a time; where will you draw the line? There is no such a defense mentioned in the statutes and after diligent search, we find no adjudicated case supporting appellant's contention. The contention of the railroad company that it was only required to make a suitable crossing over the track and that this duty did not extend to the edge of the right of way would seem to be without merit, because the owner of the plantation could not go upon the right of way of the railroad company to construct or repair the crossing.

*Garrard Harris,* on the same side.

Relative to the erroneous idea advanced in the brief of appellant, that the railroad crossing consists merely of the actual crossing of the tracks, it would defeat the manifest intent of the statute were the court to adopt so narrow a view. The crossing contemplated by law certainly means one which is susceptible of being conveniently used, and is suitable from terminus to terminus; and if either terminus is too short and the approach so deep as not to be conveniently or suitably usable, then it is the duty of the railroad company to comply with the law, even though it take the full width of the right of way to give the proper slope.

It is admitted by appellant that a plantation road is such a road as is necessary or convenient to the owner of a plantation to the use and enjoyment of his plantation; we grant that he has a right to such a crossing for his plantation road as would enable him to haul any of the products of his plantation backward and forth from one side to the other or to haul any supplies needed on his plantation. Very good so far as it goes, but somewhat limited in view. The crossing should be such that, if he can by using his land to haul over, make a profit to himself (which arises out of the ownership of the land, such as a short cut across it), that also should be included. He is not necessarily limited to the products of the place. Suppose for instance, McGowan was cutting the timber off of his land on the east side, which land was not actually a part of his inclosed plantation, but was separated by a quarter of a mile of land belonging to his brother, and was hauling the timber or wood to his house there to be hewn in shape for, say, stables, fences, or for that matter, there to ˙be stored and sold, is that an improper use of the crossing? Suppose by not using the crossing and plantation road and using public ways, he could by reason of the distance, only haul one load a day, whereas by using his own road over his own land, and the crossing provided by the railroad, he could haul four loads a ·day, will it be asserted that this was an improper use of the road and crossing?

WHITFIELD, C. J., delivered the opinion of the court.

This suit was brought by the appellee against the appellant company to recover the statutory penalty of $250 for failure to construct and maintain a necessary farm crossing, and also for $500 alleged actual damages. In the case as actually tried, practically the only contention was that the appellant was liable for the penalty for failure to maintain the farm crossing under Code 1906, § 4058. The facts necessary to be stated in order to understand our opinion are briefly these: A farm crossing had been constructed by the railroad company for this plantation, some years ago, during the ownership of a prior owner of

the plantation. The grade of the railroad had been recently raised. The appellant had constructed the crossing after the grading, and there seems to have been no complaint of this crossing so long as it was used solely by the appellee for the purposes of his plantation; but latterly appellee had given to one Davis permission to use this crossing in delivering lumber from his sawmill on one side of this railroad track to a station of the appellant on the other side of the track, and in addition to this appellee had himself assisted Davis in said hauling. It appears very clearly from the testimony that this hauling was not only of sawed lumber, but of heavy logs, and other material of weighty character, and that the result of several months' constant hauling of this character of material cut the road up fearfully, as well as the crossing, and produced the defect in the crossing which occasioned this suit. It also appears from the testimony, with perhaps sufficient clearness, that this crossing was not in good repair for the whole width of the railroad right of way; that is to say, for the entire one hundred feet from the center of the track either way to the edge of the right of way. To be exact, there was a mud-hole or sink, not on the railroad track where the rails were, not on the dump or embankment constituting the approach to the part of the railroad between the cross-ties, but just below the dump, yet within the right of way of the railroad company; and this mud hole, we think it is sufficiently shown, was caused by the constant hauling of excessively heavy lumber, etc. This is the case as made by the facts. On this case the appellant presents two contentions:

First. It is earnestly insisted by the appellant that it was not the contemplation of Code 1906, § 4058, that the plantation crossing should be constructed and maintained by the appellant over the entire one hundred feet of width of the right of way. It is enough to say that this is a manifestly unsound contention. We have heretofore held that cattle guards must extend the entire width of the right of way, and it would be a singular holding now to declare that a railroad crossing should not extend

across the entire width of the right of way. A plantation cross-
ing means a plantation road that crosses; that is to say, that
crosses over the whole width of the right of way. Let that be
definitely understood henceforth.

The second contention presented by the railroad company is
that the phrase in said statute, "necessary plantation road,"
means a road necessary to the plantation to which it is annexed,
and for the uses of which it is constructed, and that necessarily
involved in this idea is the conception that such a plantation
road as the appellant is bound to construct and maintain is one
that is necessary to the plantation, and only necessary to that
plantation, and not to be used, either by the public at large as
a public road would be, or by any considerable part of said pub-
lic, and that, to put it a little more definitely and a little more
precisely, whenever such plantation road is allowed to be used
for purposes and uses other than those by that plantation
needed, and such use results in putting the crossing into bad
repair, there is no liability on the part of the appellant railroad
company to remedy that condition; and this contention, we
think, is sound. What is it that imposed the liability to con-
struct and maintain such a crossing at all? It is what, in the
absence of any statute, might reasonably enough be called the
equitable duty which the appellant incurs to so construct and
maintain such a road for a plantation which it divides. There
would be, *ex aequo et bono,* an equitable duty on the part of
such railroad company, since it had obstructed and destroyed
the right to cross from one side to the other of a plantation, by
such railroad so divided, to construct and maintain another
crossing as a substitute for the one or ones destroyed. The lia-
bility thus arising is only to the owner of that farm for the uses
of that farm. The statute simply makes this duty a statutory
one, and provides the penalty for the failure to observe the
duty. Since the duty, from which the liability results, is only
to the owner of the farm to construct and maintain a road nec-
essary for the uses of that farm, the penalty for the failure to

92 Miss.—39.

observe that duty is limited and measured by the extent of the duty. The one, the penalty, is the legal corollary of the other, the duty or the liability. Such must be, in reason and in right, the true view.

It would not do, of course, in the application of this principle, any more than in the application of any other legal principle, to fritter away the substance of the principle by nonsensical niceties of construction either way. Common sense must preside in the proper application of every principle of law, varying the application according to the varying circumstances of each particular case; that is to say, speaking with specific reference to the application of this principle, that on the one hand it would be idle to hold that the railroad company was not liable merely because the owner of the farm had, in occasional isolated instances, permitted some neighbor to use the crossing in a proper way and for a proper use, just as, on the other hand, it would be equally silly to contend that the railroad company was bound to maintain a crossing constructed for the farm uses alone originally, when as a matter of fact the bad condition calling for repair was one which had been created by the constant hauling, over said private crossing, of the heaviest character of materials by others, one or more, permitted so to do by the owner. Certainly this is a principle justly operative within these common-sense views, so as, on the one hand, to give to the owner of a farm his just protection in having a proper crossing constructed and maintained, and also so as to give to the appellant company its just measure of protection against the abuse of the right to have a proper crossing. We are thoroughly satisfied, on the case made by the facts in this record, that there has been here a gross abuse of the right to demand that this crossing should be maintained by the appellant company, and that the railroad company was under no obligation on the facts of this record to repair or to maintain this crossing, as against damage directly occasioned to the crossing by others than the owner of the farm in a use of the crossing wholly foreign to that which it was properly intended to serve.

If we turn from the case as made by the facts to the instructions given by the court to the jury, it will be seen that the instructions are manifestly erroneous and in hopeless conflict. In instruction No. 3, given for the plaintiff, it is said: "And it makes no difference in such case that there were other crossings at other points north and south of the one in controversy, or that other parties by much hauling rendered the road impassable." In instruction No. 4, given for the plaintiff, it is said: "And if the said crossing was not properly constructed or suitably maintained, being reasonably necessary, notwithstanding the fact that others besides McGowan used it, the jury will find for the plaintiff in the statutory penalty of $250," etc. Instruction No. 6, given for the plaintiff, is in these words: "The court instructs the jury, for the plaintiff, that the amount of hauling over the crossing in controversy does not at all relieve the defendant company of its duty to maintain a suitable and convenient crossing over its track for necessary plantation roads; and the fact that others used McGowan's road does not affect the duty of the defendant, if the jury believe from the evidence that the road was in the first instance a necessary or reasonably convenient road to McGowan to get from one portion of his plantation to the other." Throughout these instructions, it is manifest, ran the thoroughly erroneous idea that, no matter how many people used the road besides McGowan, and no matter how much or what character of hauling was had over it, nevertheless the appellant company was bound to maintain the crossing in good repair.

Now, turning to the instructions for the defendant, in the very first instruction the jury were told that "the defendant is not required by the law to make and maintain crossings for the benefit of the public generally, or for the use and benefit of any other person than the plaintiff in this suit." In instruction No. 2, the court told the jury that the defendant was not required by the law to make and maintain a crossing suitable for the public, but only required to make and maintain a conven-

ient and suitable crossing for a plantation road, suited and adapted to the uses and purposes of the tract of land owned by the plaintiff; and again the jury were specifically told in the same instruction (No. 2) as follows: "The railroad company is under no legal obligation to make and maintain a crossing suitable and convenient for the use of the public at large for any other uses and purposes than the use and purposes of a plantation road for the use and benefit of the plaintiff's plantation." Here, in these instructions for the defendant, is just as distinctly announced the perfectly correct legal proposition that the duty the statute devolves upon the appellant company is to construct and maintain a road necessary for the particular plantation divided by the railroad company, its particular uses and needs. Plainly, here are two principles directly opposite to and directly contradictory of each other, given to the jury for their guidance. Those given for the defendant were correct. Those for the plaintiff should have been refused.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed.*